ST. MARY MEDICAL CENTER, INC., Appellant–Defendant,

Biocontrol d/b/a Biocontrol Technology, Inc., and other Unknown Defendant, Defendants,

v.

Esther CASKO, as Administratrix of the Estate of Samuel Casko, Deceased, and Esther Casko, Individually, Appellee– Plaintiff.

No. 45A03–9309–CV–323.

Court of Appeals of Indiana, Third District.

Aug. 23, 1994.

---

James D. McQuillan, Kristin D. Mulholland, Spangler, Jennings & Dougherty, P.C., Merrillville, for appellant.

David K. Galloway, Sr., Jennifer A. Eversole, Galloway & Jackson, Chesterton, for appellee.

GARRARD, Judge.

St. Mary Medical Center, Inc. (St. Mary) appeals the denial of its motion to dismiss, which was based on the contention that Esther Casko (Casko) did not comply with the statute of limitations for an action under the Indiana Medical Malpractice Act. We reverse.

**FACTS**

On April 27, 1987, Samuel Casko received a pacemaker while a patient at St. Mary. As a result of an alleged failure in the pacemaker, Samuel Casko died on September 26, 1990.

Casko filed suit on December 21, 1992, against St. Mary and the various doctors involved in the care of Samuel Casko, alleging counts of breach of warranty, negligence, failure to inform and breach of contract. Casko also made a products liability claim against Biocontrol, d/b/a Biocontrol Technology, Inc., which allegedly manufactured, distributed and sold the pacemaker, and St. Mary, which allegedly distributed and sold the product. Through a stipulation of dismissal the claims involving medical malpractice were dismissed, but the court declined to dismiss the products liability claim on St.

Mary's motion. The court certified its order for interlocutory appeal, which was accepted by this court on March 8, 1994.

**DISCUSSION**

■ In review of a motion to dismiss, the facts alleged in the complaint must be taken as true and only where it appears that under no set of facts could plaintiffs be granted relief is dismissal of the complaint appropriate. *Brenner v. Powers* (1992), Ind.App., 584 N.E.2d 569, 573.

The Indiana Products Liability Act provides that a seller who places any defective product unreasonably dangerous to any consumer into the stream of commerce is subject to liability if the consumer is in the class of persons that the seller should reasonably foresee as being subject to such harm, *the seller is engaged in the business of selling such a product,* and the product is expected to and does reach the consumer without substantial alteration of the condition in which it was sold. Ind.Code § 33–1–1.5–3(a). A "seller" is defined as "a person engaged in business as a manufacturer, a wholesaler, a retail dealer, a lessor, or a distributor. I.C. § 33–1–1.5–2. The term "product" means "any item or good that is personalty at the time it is conveyed by the seller to another party. *It does not apply to a transaction that, by its nature, involves wholly or predominantly the sale of a service rather than a product."* *Id.* (emphasis added).

■ St. Mary argues that it is not a seller which is engaged in the business of selling pacemakers, but that it is in the business of providing professional medical services to its patients, including facilities, skilled personnel, and equipment. St. Mary maintains that the sale of various items necessary for a patient's treatment are merely incidental to the overall purpose of providing health care. Casko counters that "[w]hile it is true St. Mary does employ nursing staffs and other medical personnel who provide treatment to patients, the predominate activity is to sell goods and products to patients." (Brief of Appellee at 9). Casko argues that the medical services provided by a hospital, consisting primarily of the nursing staff, should be treated under the Medical Malpractice Act,

while the products sold by the hospital may properly be addressed by the Products Liability Act.

We cannot agree with Casko. It is the substance of a claim, not its caption, which determines whether compliance with the Medical Malpractice Act is necessary. *Van Sice v. Sentany* (1992), Ind.App., 595 N.E.2d 264, 266; *Boruff v. Jesseph* (1991), Ind.App., 576 N.E.2d 1297. While no Indiana cases have addressed the specific issue before us, we find guidance in *Dove by Dove v. Ruff* (1990), Ind.App., 558 N.E.2d 836, *reh. denied, trans. denied,* where the parents of a child who suffered a reaction to a drug brought a products liability suit against the physician who prepared and sold the medication. The court addressed the issue of whether the transaction came under the definition of a product within the Products Liability Act:

> By its nature, the practice of medicine is primarily a service, but there are times when goods are provided to patients incidental to the delivery of health care services. The providing of such goods does not normally remove the health care professional from the protection of the Malpractice Act. The incidental furnishing of supplies or equipment during the course of medical treatment does not create a buyer-seller relationship between a patient and his physician which could give rise to an implied or express warranty. *In order for there to be liability under a theory of strict liability, the seller of the product must be engaged in the business of selling that item.*

*Id.* at 838 (citations omitted) (emphasis added).

Upon review of case law from other jurisdictions addressing the issue before us, we conclude that this rationale applies with equal force to a hospital in the exercise of its primary function, to provide medical services. In *Hector v. Cedars–Sinai Medical Center* (1986), 180 Cal.App.3d 493, 225 Cal.Rptr. 595,[1] the plaintiff, as Casko does here, argued that the hospital, in selling a pacemaker

to its patient, was acting as a conduit in the distribution of the product to the consumer and was not actually furnishing medical services. However, the court disagreed:

> Unlike the products sold in a hospital gift shop, for which the hospital is strictly liable, the pacemaker provided to the patient is necessary to the patient's medical treatment. While the hospital itself does not use its own medical skill or knowledge in providing its services in connection with the provision of the pacemaker for the patient, the hospital still is engaged in the process of providing everything necessary to furnish the patient with a course of treatment. In this regard, the hospital's actions concerning the provision of the pacemaker are "integrally related to its primary function of providing medical services."

*Id.* 225 Cal.Rptr. at 601 (citation omitted). The position of the California court appears to be the accepted general rule. *See also Hoff v. Zimmer, Inc.* (1990), W.D.Wis., 746 F.Supp. 872 (interpreting Wisconsin law, district court would not hold hospital strictly liable when prosthesis failed); *North Miami General Hospital, Inc. v. Goldberg* (1988), Fla.App., 520 So.2d 650 (hospital not a business within product's distributive chain but is properly regarded as a consumer that employs the product in performing its actual function of providing medical services); *Cutler v. General Elec. Co.* (1967), N.Y.Sup., 4 U.C.C.Rep.Serv. 300, 1967 WL 8950 (breach of warranty action against hospital for defective pacemaker dismissed because primary engagement was treatment of the patient, not the business of selling surgical appliances); Annot., 54 A.L.R.3d 258 (1973).

Casko urges that, given the unique characteristics of our malpractice act, we should not be persuaded by authority from other jurisdictions. However, we discern no logical reason not to examine such authority, and note that the court in *Dove* relied on case law from other states in determining whether the

---

1. Casko urges us to distinguish *Hector* as being a fact-sensitive decision. While the court did discuss in detail the underlying facts, the opinion did not limit the holding specifically to those facts. Moreover, there appears to be no dispute that St. Mary did render medical services to Samuel Casko to the extent that his pacemaker was implanted at the hospital. In fact, Casko's complaint alleged that St. Mary had been negligent in rendering such services. (R. 5–10).

doctor's actions fell within the Medical Malpractice Act as opposed to the Products Liability Act. The value of these cases is not dependent upon the characteristics of our malpractice act, but instead it is relevant to the determination of whether the Products Liability Act is applicable to the present case.

Casko alternatively relies upon several premises liability cases which concluded that a claim of ordinary negligence was not within the confines of the Medical Malpractice Act. However, unlike those cases, where the allegations of negligence were unrelated to a scheme of health care, the provision of a pacemaker is clearly a part of the overall medical services provided by the hospital. *See Methodist Hospital of Indiana, Inc. v. Ray* (1990), Ind.App., 551 N.E.2d 463, 466 (opinion adopted (1990), Ind., 558 N.E.2d 829). Samuel Casko entered St. Mary not merely to purchase a pacemaker, but to obtain a course of treatment which included the implantation of a pacemaker. This is supported by Casko's complaint, which alleged that the defendants, including St. Mary, "undertook to treat and provide health, medical, and surgical care, diagnosis and treatment to the Plaintiff, Samuel Casko." (R. 8). Casko attempts to argue two opposing contentions from the same set of facts: one, that St. Mary performed negligent medical services, and, two, that St. Mary is primarily a seller of goods and not a provider of medical services. Clearly, the essence of St. Mary's conduct in this case is not that of a seller of pacemakers but rather that of a provider of medical services. As such, it cannot be subject to strict liability for a defective product provided to a patient during the course of his or her treatment.

■ We similarly conclude that this case is governed by the Medical Malpractice Act. Under the Act, "malpractice" means "a tort or breach of contract based on health care or professional services that were provided, or that should have been provided, by a health care provider, to a patient." I.C. § 27–12–2–18. A "health care provider" is defined as "[a]n individual, a partnership, a limited liability company, a corporation, a professional corporation, a facility, or an institution licensed or legally authorized by this state to provide health care or professional services as a ... hospital...." I.C. § 27–12–2–14. The Act applies to conduct, curative or salutary in nature, by a health care provider acting in his or her professional capacity, and is designed to exclude only conduct which is unrelated to the promotion of a patient's health or the provider's exercise of professional expertise, skill, or judgment. *Id.* (citations omitted). We conclude that Casko's action against St. Mary is controlled by the Medical Malpractice Act, as St. Mary was a health care provider performing medical services, and the trial court therefore erred in denying the motion to dismiss, as the action is time-barred by the two year statute of limitations. I.C. § 27–12–7–1(b); *Babcock v. Lafayette Home Hosp. Women's Clinic* (1992), Ind.App., 587 N.E.2d 1320.

STATON J., and RATLIFF, Sr. J., concur.