David J. HARRIS, D.D.S., and Michiana Oral and Maxillofacial Surgery, Inc., Petitioners/Appellants (Defendants Below),

v.

Mary J. RAYMOND, Robert E. Raymond, Donna Bennett, Commissioner of Insurance, and G. Anthony Bertig, Respondents/Appellees (Plaintiffs Below).

No. 71S05–9805–CV–276.

Supreme Court of Indiana.

Sept. 2, 1999.

Rehearing Denied Nov. 9, 1999.

Kevin Charles Murray, Sandra Boyd Williams, Locke Reynolds Boyd & Weisell, Indianapolis, Indiana, Attorneys for Appellants.

Debra Lynch Dubovich, Levy & Dubovich, Highland, Indiana, Priscilla A. Herochik, Merrillville, Indiana, Attorneys for Appellee.

## ON PETITION TO TRANSFER

SELBY, J.

David J. Harris, D.D.S. and Michiana Oral and Maxillofacial Surgery, Inc. ("defendants") challenge the trial court's denial of their motion for summary judgment on the question of the applicability of the two-year medical malpractice statute of limitations, Indiana Code § 34–18–7–1(b) (1998), which defendants assert as a bar to the malpractice claims of Mary Raymond and her husband Robert Raymond. The Raymonds allege that Harris, after inserting Vitek dental implants in Mary Raymond's jaw, negligently failed to warn her of the dangers associated with the implants after he received a safety alert regarding these implants from the Food and Drug Administration ("FDA").

We hold that the statute of limitations contained in the Medical Malpractice act cannot constitutionally be applied to bar Raymond's claim. We reach this conclusion by a careful application of the recently decided case, *Martin v. Richey*, 711 N.E.2d 1273 (1999) [hereinafter *"Martin"*], which held that the two-year medical malpractice statute of limitations could not operate to bar a claim where the long latency period of a defendant's disease prevented the discovery of the asserted negligence until after the statutory limitations period had run. We find that Raymond, like the plaintiff in *Martin*, could not have discovered the asserted negligence until after the statutory limitations period had run, and, consequently, that the application of the two-year statute of limitations would unconstitutionally deprive her of a claim when she had no reason to know of the existence of her claim. We further hold Raymond timely filed her claim after discovering the asserted negligence. Accordingly, we conclude that the trial court properly denied defendant's motion for summary judgment, and we remand for further proceedings not inconsistent with this opinion.

## FACTS AND PROCEDURAL BACKGROUND

The facts material to this dispute as to the application of the medical malpractice statute of limitations here are undisputed.[1] Plaintiff Mary Raymond experienced severe jaw pain for several years. Her dentist referred her to defendant Dr. David Harris for evaluation of her temporomandibular joint ("TMJ") dysfunction. On June 11, 1986, defendant performed surgery in an effort to correct the dysfunction. He inserted Vitek Proplast Teflon discs into her jaw. Thereafter, plaintiff continued as defendant's patient. She consulted him regarding her implant and pain that she was experiencing on several dates, including July 25, 1988. Plaintiff's last office visit was on July 12, 1990, at which time defendant removed two teeth.

Sometime in 1991, Dr. Harris responded to an inquiry concerning the implants by an insurance adjuster following a work-related injury to plaintiff's jaw. Later in 1991, plaintiff relocated from Indiana to Arizona. She sent defendant her new address and a check for copies of her dental records. Defendant cashed the check and forwarded the records to her. Plaintiff found a dentist in Arizona, but she asserts that she nevertheless continued to regard defendant as her dentist as well. Plaintiff also asserts that she tried to reach defendant by telephone in July of 1992 and on April 5, 1993, and the April 5th call is noted on her chart.

In March of 1990, Vitek, the manufacturer of the implants, issued a safety alert and at that time the FDA asked Vitek not to sell more implants until it completed its safety investigation. On or about December 28, 1990, the FDA issued a safety alert to all oral and maxillofacial surgeons regarding serious problems resulting from the Proplast implant and recommending notification of patients to obtain immediate and appropriate radiographic examination. At approximately that time or shortly thereafter, the FDA also issued a recall order.

1. Where the material facts are undisputed, the question is generally one of law to be resolved by the court. *See Cowe v. Forum Group, Inc.*, 575 N.E.2d 630, 633 (Ind.1991).

Defendant testified that he was aware that the FDA had asked Vitek not to continue to sell the implant in March of 1990, and that, at about that time, he stopped using the implants. He further testified that he did not remember receiving written information from the FDA regarding the implants until December 1991, and, at that time, defendant's staff attempted to contact patients who had received the implants and to send them the information. Defendant testified that he felt that he had an obligation to notify patients of the FDA safety alert. Plaintiff maintains that she did not receive any communication from defendant regarding the safety of the implants, and defendant does not dispute this fact or explain why she was not notified, except to say that her name was not on the list of patients with implants that his staff had compiled.

In March of 1993, plaintiff developed a severe earache and began bleeding from the ear. She consulted a doctor who thought she might have a tumor.[2] In fact, upon removal of the suspicious mass, she learned that it was a piece of Teflon. She had further tests, including a CAT scan which showed that her dental implants had shattered.

On April 28, 1993, Dr. Colyer removed the implants. He has opined that they were the normal size and shape of preformed implants and did not appear to have been trimmed or contoured to fit plaintiff's jaw as is generally done to prevent overextension and impingement upon the external boundaries of the joint. Dr. Colyer was unable to remove all of the pieces of the implant, and plaintiff had follow-up surgery performed by another physician. Some pieces of Teflon remain imbedded in her jaw and cannot be removed. As a result of the shattered implant, she asserts that she has suffered damages, including a perforated ear drum and muffled hearing.

Prior to having the implants removed, she asserts that she had heard or read nothing regarding the safety of Vitek implants or the FDA recall.

Plaintiff filed her initial complaint on August 16, 1993 and her amended complaint on January 25, 1994. She alleges, among other things, that defendant failed to properly disclose the risks associated with the implants and implant surgery; that he negligently performed the implant surgery; and that he failed to warn her that the implants were defective and likely to cause injury and for the need of radiologic evaluation and/or removal of the implant even after he knew or should have known of the risks.

Defendant moved for summary judgment on the ground that plaintiff's claims were barred by Indiana Code § 34–18–7–1(b) (1998) (formerly § 27–12–7–1(b) (1993)), the medical malpractice statute of limitations. Plaintiff opposed this motion and argued, among other things, that the statute of limitations was unconstitutional and that, under the doctrine of continuing wrong, plaintiff's complaint was timely filed.

The trial court denied defendant's motion for summary judgment. The Court of Appeals affirmed the trial court and, citing *Martin v. Richey,* 674 N.E.2d 1015 (Ind.Ct. App.1997), held that the statute of limitations was unconstitutional on its face under Article I, Sections 23 and 12, the Privileges and Immunities and Open Courts Clauses of the Indiana Constitution. 680 N.E.2d 551 (Ind. Ct.App.1997). We subsequently granted transfer and vacated the Court of Appeals decision in *Martin,* as well as the decision of the court below. 698 N.E.2d 1192 (Ind.1998). In *Martin,* 711 N.E.2d 1273 (Ind.1999), we declined to hold that the statute is unconstitutional on its face. Nevertheless, we did hold in *Martin* that, under Article I, Section 12 and Section 23 of the Indiana Constitution, the two-year occurrence-based statute of limitations may not constitutionally be applied to preclude the filing of a claim before a plaintiff either knows of the malpractice and resulting injury, or discovers facts, which in the exercise of reasonable diligence, should lead to the discovery of the malpractice and the resulting injury.[3] *See id.* at 1279.

---

2. Plaintiff finished chemotherapy to treat her breast cancer in mid-February 1993.

3. We further held in *Van Dusen v. Stotts,* 712 N.E.2d 491 (Ind.1999), a companion case to *Martin,* that, when plaintiffs suffer from a disease or condition with a long latency period and

## DISCUSSION

Defendant challenges the trial court's denial of his motion for summary judgment on the question of the applicability of the two-year medical malpractice statute of limitations, Indiana Code § 34–18–7–1(b), which defendant asserts as a bar to plaintiff's claims.

Under *Martin*, we find, based on the facts of the present case, the statute of limitations is unconstitutional as applied, and, as a result, we need not reach the issue of whether the doctrine of continuing wrong allows the plaintiff relief. In other words, Raymond, like Martin, could not have discovered the alleged negligence within the statutory period, and to apply the statute of limitations would force her to bring a claim before she knew or reasonably could have known of the existence of such claim.

In Parts I and II, we discuss two preliminary issues that were not directly addressed by the parties on appeal. The first issue relates to the applicability of § 34–18–7–1(b) in this case. The second issue is the validity of plaintiff's third claim of negligence, that is, defendant's breach of his duty to warn plaintiff of the safety issues related to her dental implants. In Part III, we discuss the constitutionality and application of the medical malpractice statute of limitations on the facts of this case.

### I. *Applicability of the Medical Malpractice Statute*

■ Both parties assume that the applicable statute of limitations in this case is the medical malpractice statute of limitations, § 34–18–7–1(b).[4] While their assumption is correct, for the sake of clarity, we explain

briefly why this is so. The legislature enacted § 34–18–7–1(b) as a part of the Medical Malpractice Act of 1975 ("Act"),[5] which was designed to further the legislative goal of controlling malpractice costs by encouraging the prompt presentation of claims and, in so doing, limiting unfair exposure to defending health care providers that stems from dimmed memories or the loss of evidence over time. *See Rohrabaugh v. Wagoner*, 274 Ind. 661, 413 N.E.2d 891, 894–95 (1980). That Act defines "malpractice" as a "tort or breach of contract *based on health care or professional services* that were provided, or that should have been provided, by a health care provider, to a patient." Ind.Code § 34–18–2–18 (1998) (emphasis added). A "health care provider" is defined to include "[a]n individual, a partnership, a limited liability company, a corporation, a professional corporation, a facility or an institution licensed or legally authorized by this state to provide health care or professional services as a physician ... [or] dentist...." Ind.Code § 34–18–2–14(1) (1998).

Given the goal of the Act, it is appropriate to construe the terms "based on health care or professional services," as used both in § 34–18–7–1(b) and § 34–18–2–18, to include the asserted negligent insertion of a dental implant device as well as the failure to inform plaintiff of risks prior to surgery or to warn her after her surgery of the safety issues which the manufacturer and the FDA raised, as alleged in the complaint in this case. If this is so, then the period of limitations set forth in § 34–18–7–1(b), which has been construed as a statute that runs from the occurrence of the malpractice,[6] rather than the more generous discovery-based period of lim-

---

symptoms which may not surface until several years after the asserted malpractice, the two-year statutory period begins to run when the plaintiff discovers the malpractice or discovers facts that, through the exercise of reasonable diligence, should lead to the discovery of the malpractice and resulting injury. *Van Dusen*, 712 N.E.2d at 495.

**4.** Section 34–18–7–1(b) · provides in pertinent part and with emphasis added as follows:

A claim, whether in contract or tort, may not be brought against a health care provider *based upon professional services or health care*

that was provided or that should have been provided unless the claim is filed within two (2) years after the date of the alleged act, omission, or neglect....

**5.** Act of Apr. 17, 1975 (commonly referred to as "The Medical Malpractice Act of 1975"), Pub.L. No. 146, 1975 Ind. Acts 854 (codified at Ind. Code §§ 34–18–1–1 to 34–18–18–2 (1998)). *See Martin v. Richey*, 711 N.E.2d 1273, 1277 n. 4, 1277–78 n. 5 (Ind.1999).

**6.** *See, e.g., Hospital Corp. of America v. Hiland*, 547 N.E.2d 869, 872 (Ind.Ct.App.1989), *adopted in Cacdac v. Hiland*, 561 N.E.2d 758 (Ind.1990).

itations applicable to other tort[7] or product liability cases,[8] applies here. *See St. Mary Medical Center, Inc. v. Casko,* 639 N.E.2d 312, 315 (Ind.1994). Therefore, the parties correctly assumed that § 34–18–7–1(b) applies to plaintiff's claims.

## II. Breach of Duty to Warn

Plaintiff below raises three distinct but closely related claims of malpractice. The first is that defendant failed to explain adequately the risks associated with the implants and the implant surgery and that this deprived her of the opportunity to give informed consent to the surgery. Indiana jurisprudence recognizes such claims as a variety of negligence or medical malpractice.[9] The second claim is that defendant negligently inserted the implants. This is the more typical form of medical malpractice claim. The third claim is that the defendant failed to warn her of safety concerns which are associated with the implants and which the manufacturer and the FDA raised after her surgery.

It is this third claim which we address here. Defendant does not appear to seriously dispute that there is a duty to warn a patient of an FDA safety alert, as plaintiff alleges, or that he failed to notify plaintiff here of the FDA safety alert. Although defendant points out that there is currently no statute or common law establishing this duty, he did not move to dismiss the claim and rather assumes that he had at least some duty to act. We agree that defendant did have a duty to warn plaintiff regarding the safety of her implants.

In malpractice cases which sound in negligence, as in other negligence cases, a plaintiff must establish three elements: (1) a duty on the part of the defendant to conform his conduct to a standard of care arising from his relationship with the plaintiff; (2) a failure on the part of defendant to conform his conduct to the requisite standard of care required by the relationship; and (3) an injury to the plaintiff proximately caused by the breach. *See Walker v. Rinck,* 604 N.E.2d 591, 594, 596 (Ind.1992); *Webb v. Jarvis,* 575 N.E.2d 992, 995 (Ind.1991); *Cowe v. Forum Group, Inc.,* 575 N.E.2d 630, 636 (Ind.1991); *Burke v. Capello,* 520 N.E.2d 439, 441 (Ind. 1988), *overruled on other grounds, Vergara By Vergara v. Doan,* 593 N.E.2d 185, 186–87 (Ind.1992).

The question of whether a duty exists on the part of a particular defendant to conform his conduct to a certain standard for the benefit of the plaintiff is generally a question of law. *See Cowe,* 575 N.E.2d at 636. A court considers and weighs three factors in making this determination: (1) the relationship between the parties; (2) the reasonable foreseeability of harm to the person injured; and (3) public policy concerns. *See Walker,* 604 N.E.2d at 594; *Stump v. Commercial Union,* 601 N.E.2d 327, 332 (Ind. 1992); *Webb,* 575 N.E.2d at 995. *See also Perdue Farms, Inc. v. Pryor,* 683 N.E.2d 239, 241 (Ind.1997); *Hooks SuperX, Inc. v. McLaughlin,* 642 N.E.2d 514, 517 (Ind.1994). In general, though, courts will find that a duty of care exists if reasonable persons would recognize it and agree that it exists. *See Stump,* 601 N.E.2d at 332. *See generally* W. Page Keeton et al., *Prosser & Keeton on Torts* § 53, at 359 (5th ed.1984) [hereinafter "*Prosser*"].

The question of what standard of care applies in a specific context, and the related question of whether the defendant has breached his duty to adhere to that particular standard, are often questions of fact. *See Hooks SuperX, Inc.,* 642 N.E.2d at 519. In medical malpractice cases, for example, we have held that the general standard of care that a health care provider must exercise is "that degree of care, skill, and proficiency exercised by reasonably careful,

---

7. *See* Ind.Code § 34–11–2–4 (1998) (formerly codified at § 34–1–2–2 (1993); general tort statute of limitations); *Wehling v. Citizens Nat'l Bank,* 586 N.E.2d 840, 843 (Ind.1992) (applying a discovery rule).

8. *See* Ind.Code § 34–20–3–1 (1998) (formerly codified at § 33–1–1.5–5 (1993); product liability statute of limitations); *Allied Resin Corp. v. Waltz,* 574 N.E.2d 913, 915 (Ind.1991) (applying a discovery rule).

9. *See, e.g., Culbertson v. Mernitz,* 602 N.E.2d 98, 104 (Ind.1992).

skillful, and prudent practitioners in the same class to which he belongs, acting under the same or similar circumstances." *Oelling v. Rao*, 593 N.E.2d 189, 191 (Ind.1992). To establish the particular standard of care in a malpractice case and the breach of the duty to adhere to that particular standard, however, a plaintiff must often present expert testimony to the trier of fact about what other reasonable doctors similarly situated would have done under the circumstances. *See id.* This is so because of the often highly technical and complicated nature of medical treatment. *See Burke*, 520 N.E.2d at 441. Nevertheless, not all medical malpractice cases are so technical that they require expert testimony, and when no reasonable jury could reach any conclusion other than that a specific standard of care is applicable and was breached, the questions of what specific standard is applicable and whether that standard was breached are questions of law for the court. *See Culbertson v. Mernitz*, 602 N.E.2d 98, 104 (Ind.1992) (stating that expert testimony is necessary "except in those cases where deviation from the standard of care is a matter commonly known by lay persons"); *Burke*, 520 N.E.2d at 441. *See generally* Prosser § 37, at 237–38.

■ The specific questions presented here are as follows: (1) whether there is a specific duty to warn a patient that a medical device previously placed in the patient by that physician or oral surgeon may be unsafe and to urge them to get follow-up care when the manufacturer and/or the FDA have issued safety alerts regarding the medical device; (2) whether the physician or oral surgeon owes any such duty not only to his current patients but also to former patients; and (3) whether the duty to warn, assuming it exists, has been breached here. We conclude that, as a matter of law, defendant had a duty to warn both current and former patients, including plaintiff, of safety issues highlighted by the manufacturer and/or the FDA, and that, based on the undisputed facts, defendant has breached that duty here.

■ In analyzing the first two questions, we consider and weigh the three factors set forth in *Walker*. As to the relationship between the parties, there can be no question that a health care provider such as a physician or an oral surgeon owes a general duty to his patient. *See Oelling*, 593 N.E.2d at 191. The duty of an oral surgeon to his patient arises from the contractual relationship entered into between the two of them. *See Walker*, 604 N.E.2d at 594. Moreover, the relationship between a health care provider, such as a physician or oral surgeon, and a patient is special and particularly important in that the patient relies heavily on the expertise of that health care provider in making decisions that may greatly impact the patient's health and well-being. Because of the nature of this relationship, it is essential that the health care provider disclose material facts to the patient at appropriate times during the course of the patient's treatment so that the patient may make informed decisions about health care issues. *See supra* note 9. There is nothing about the nature of the relationship that would warrant any conclusion other than that the physician or oral surgeon has a duty to warn his patients about manufacturer and FDA safety alerts that pertain to medical devices the physician or oral surgeon previously inserted or implanted in his patients.

The question of foreseeability is equally clear. Once a doctor or oral surgeon receives a safety alert about a project, it can hardly be argued that any harm to a patient arising from this product is not foreseeable. A manufacturer or the FDA issues a special safety alert or recalls a medical device precisely because the product puts the patient at risk of harm. *See Walker*, 604 N.E.2d at 594–95.

As to the public policy factor, there are compelling reasons to require that health care providers who insert or implant medical devices in their patients stay abreast of safety issues pertaining to those medical devices and promptly pass along important information regarding the safety or risks associated with those devices to their patients. This is particularly true when, as in cases such as this one, the manufacturer or the FDA issues safety alerts or when the FDA recalls the device. The physician or oral surgeon who inserted or implanted the device needs to stay informed about such pronouncements to

perform effectively and responsibly as a professional. The physician or oral surgeon who inserted the medical device is also in a good position to maintain records of patients who have such devices so that they may be notified if significant new information pertaining to the safety of the medical devices becomes available. Any countervailing interest in guarding against imposing potentially burdensome requirements for finding patients who may have relocated can be addressed by qualifying the duty so that the physician or oral surgeon need only take reasonable steps to update patient information and to locate patients whose address of record changes.

Our conclusion that there is a duty to warn a patient of safety issues raised by the manufacturer and/or the FDA finds support in decisions of other jurisdictions that either expressly or implicitly have recognized a duty to warn in similar circumstances. *See Allen v. Belinfante*, 217 Ga.App. 754, 458 S.E.2d 867, 869–70 (1995) (dental implants); *Welch v. McCarthy*, 677 A.2d 1066, 1069 (Me. 1996) (dental implants); *Tanuz v. Carlberg*, 122 N.M. 113, 921 P.2d 309, 313 (1996) (dental implants); *Reyes v. Anka Research, Ltd.*, 111 Misc.2d 152, 443 N.Y.S.2d 595, 597 (Sup. Ct.1981) (intrauterine device); *Bruske v. Hille*, 567 N.W.2d 872, 876 (S.D.1997) (dental implants).

Having concluded that a physician or oral surgeon who implants medical devices in a patient has a duty to warn the patient of safety issues raised by the manufacturer and/or the FDA, we also conclude that this duty extends to both current and former patients. The analysis of the three factors is essentially the same for both classes of patients. It makes no sense to differentiate between the two classes of patients in this context given the strong public policy reasons for imposing a duty as outlined above, and given that, as the facts in this case demonstrate, there is no bright line test for distinguishing between a current patient who perhaps has not seen the provider for quite some time and a former patient who has intentionally severed all ties with the provider. This conclusion finds support in cases from other jurisdictions. *See, e.g., Tanuz*, 921 P.2d at 310–11, 313 (citing *Kern By and*

*Through Kern v. St. Joseph Hospital*, 102 N.M. 452, 697 P.2d 135, 139 (1985)). While we need not decide today the precise limits of the duty to warn, at the very least, a safety alert issued by the manufacturer or the FDA triggers the need to make reasonable efforts to contact all current and former patients with the implants.

Defendant does not dispute that the FDA issued a safety alert in 1990, that defendant had access to plaintiff's new Arizona address and in fact forwarded her dental record to her at her request, and that he nonetheless failed to notify her of the safety issues relating to the dental implant he had previously inserted in 1988. Whether this constitutes a breach of the duty to warn can, on remand, be the subject of further motions for summary judgment or a trial on the merits.

### III. *Martin v. Richey*

Having determined as a matter of law that Harris breached a duty to Raymond by the failure to warn her of the dangers associated with Vitek implants, we must now determine if summary judgment was nonetheless appropriate because the claim was barred by the statute of limitations. According to defendant, the two-year time period begins to run from the date of the "alleged act, omission, or neglect," Ind.Code § 34–18–7–1(b), and that can be no later than July 25, 1988, when defendant asserts he last saw plaintiff for TMJ-related symptoms, or on July 12, 1990, the last time plaintiff saw defendant for any reason. Under defendant's theory, then, the statute of limitations ran at the latest on July 12, 1992, and since she did not file her complaint until August 16, 1993, her complaint was untimely. We conclude that the trial court properly denied defendant's motion for summary judgment because, according to the principles announced in *Martin v. Richey*, 711 N.E.2d 1273 (Ind.1999), an application of the statute of limitations on the facts of this case would be unconstitutional.

In *Martin*, we held that the two-year occurrence-based statute of limitations may not constitutionally be applied to preclude the filing of a claim before a plaintiff either knows of the malpractice and resulting injury, or discovers facts, which in the exercise of

reasonable diligence, should lead to the discovery of the malpractice and the resulting injury. *See id.* at 1279. We found that Article I, Section 23 of the Indiana Constitution, the Privileges and Immunities Clause, requires that the statute of limitations be "uniformly applicable" to all medical malpractice victims, and cannot operate to preclude a plaintiff from filing a claim simply because she has a disease which has a long latency period. *See id.* at 1281–82. We stated that "plaintiff cannot be foreclosed from bringing her malpractice suit when, unlike many other medical malpractice plaintiffs, she could not reasonably be expected to discover the asserted malpractice and resulting injury within the two-year period given the nature of the asserted malpractice and of her medical condition." *Id.* at 1282. We further held that to do so would also bar her access to the courts as guaranteed by Article X, Section 12 of the Indiana Constitution. *See id.* at 1284–85. We stated that "[i]f Section 12 has any meaning at all, it must preclude the application of a two-year medical malpractice statute of limitations when a plaintiff has no meaningful opportunity to file an otherwise valid tort claim within the specified statutory time period because, given the nature of the asserted malpractice and the resulting injury or medical condition, plaintiff is unable to discover that she has a cause of action." *Id.* at 1284.

Analogizing *Martin* to the facts of this case, there is no indication that Raymond knew that there was anything wrong with her jaw implants before 1993. It was in 1993 that she consulted a doctor for bleeding from her ear, and in 1993 when a piece of Teflon used in the Vitek implant was removed from her head. It was in 1993 that Raymond discovered that the Vitek implant had shattered, and in 1993 that Raymond discovered that the FDA had issued a safety alert regarding the Vitek implants. Raymond filed her malpractice claim against Harris on August 6, 1993, amending her complaint on January 25, 1994. As we stated in *Van Dusen v. Stotts,* 712 N.E.2d 491 (1999), when the medical malpractice statute of limitations cannot constitutionally be applied to bar a claim, the plaintiff has two years after the discovery of the malpractice or the dis-

covery of those facts which, in the exercise of ordinary diligence, should lead to the discovery of the malpractice within which to bring a claim. *See id.* at 496–97. We find that plaintiff filed her complaint within the two-year statute of limitations.

## CONCLUSION

We affirm the trial court's denial of defendant's motion for summary judgment and remand to the St. Joseph Circuit Court for further proceedings not inconsistent with this opinion.

SHEPARD, C.J., and DICKSON, SULLIVAN, and BOEHM, JJ., concur.