## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Nov 16 2018, 9:04 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

| APPELLANT PRO SE | ATTORNEYS FOR APPELLEE |
| --- | --- |
| Rickie B. Gilliam | Curtis T. Hill, Jr. |
| Carlisle, Indiana | Attorney General of Indiana |
| | George P. Sherman |
| | Supervising Deputy |
| | Attorney General |
| | Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
| --- | --- |
| Rickie Bill Gilliam, | November 16, 2018 |
| *Appellant-Petitioner,* | Court of Appeals Case No. 79A02-1706-PC-1390 |
| v. | Appeal from the Tippecanoe Superior Court |
| State of Indiana, | The Honorable Steven P. Meyer, Judge |
| *Appellee-Respondent.* | Trial Court Cause No. 79D02-1406-PC-4 |

**Robb, Judge.**

# Case Summary and Issues

[1]     Following a jury trial, Rickie Gilliam was convicted of two counts of attempted murder, both Class A felonies; being a serious violent felon in possession of a firearm, a Class B felony; attempted battery, a Class C felony; and maintaining a common nuisance, a Class D felony. The trial court sentenced Gilliam to sixty-three years in the Indiana Department of Correction. We affirmed Gilliam's convictions on direct appeal. *Gilliam v. State*, No. 79A02-1206-CR-482 (Ind. Ct. App. Apr. 1, 2013), *trans. denied*. Thereafter, Gilliam filed a petition for post-conviction relief alleging ineffective assistance of trial counsel which was denied by the post-conviction court. Gilliam, pro se, now appeals the denial of post-conviction relief, raising two issues for our review which we restate as (1) whether the post-conviction court erred in denying Gilliam's petition for post-conviction relief, and (2) whether Gilliam received ineffective assistance of post-conviction counsel. Concluding the post-conviction court did not err and Gilliam did not receive ineffective assistance of post-conviction counsel, we affirm.

# Facts and Procedural History

[2]     We summarized the facts and procedural history of this case in Gilliam's direct appeal:

> Heather Short and Gilliam were involved in a romantic relationship for approximately three years and lived together in Lafayette with their three-year-old son. In December 2010, the couple argued and Gilliam pulled out a gun. Gilliam stated that

he would "kill [Heather] with the gun if [she] didn't knock [her] sh*t off." Heather was scared and would not leave the couple's bedroom. At some point, Heather sent a text message to her brother, Jeremiah Short, who came to the house and went to Heather's bedroom window. Jeremiah talked to Heather and wanted her to leave with him; however, Heather declined.

On January 8, 2011, Heather and Gilliam ended their relationship. Heather went to Jeremiah's to stay, and at some point, Heather and Jonathan Beard, Jeremiah's roommate, began a sexual relationship. On January 14, 2011, Heather drove Beard to his job at Penguin Liquors. Heather asked Beard if he knew of any place where she could stay that night because she "was trying to avoid her son's father." Beard offered to rent her a motel room for the weekend. After Beard's shift ended at 2:00 a.m., Heather picked him up and drove to an Economy Inn, where Beard paid for a room.

After pulling up to one of the rooms, Heather and Beard noticed that the number on the door was not the same room that he had rented. Heather put the car in reverse, but at that moment, Gilliam drove up in a red vehicle. Gilliam exited his car and started shooting at Heather and Beard with a handgun. Numerous rounds hit the body of the vehicle and the windows. Beard hunched down to avoid being shot and Heather accelerated. Gilliam fired another shot that struck Heather's windshield.

After Heather drove away, she contacted 911 and reported that Gilliam had tried to kill her and Beard. Shortly after the call, several police officers went to Gilliam's residence and noticed a red Chevy Impala parked in the driveway, but the license plate on the vehicle was registered to Gilliam's red Pontiac Grand Prix. The Impala was slightly covered in snow, and the engine was cold.

The officers set up a perimeter around the house and although a television was on, no one was observed entering or exiting the house. Later that morning, a SWAT team searched the house and confirmed that no one was inside. The officers discovered twelve rounds of .9mm Ruger ammunition, as well as several bags of marijuana, marijuana cigarettes, rolling papers, and digital scales. Several .25 caliber shell casings were found in the motel parking lot where the shooting occurred.

On the day of the shooting, Heather and Beard positively identified Gilliam from a photo array. Later that week, Jeremiah, who was Gilliam's friend, observed Gilliam driving a red Pontiac Grand Prix. On February 14, 2011, the State charged Gilliam with the following offenses:

Count I—Attempted Murder, a class A felony
Count II—Attempted Murder, a class A felony
Count III—Attempted Aggravated Battery, a class B felony
Count IV—Attempted Aggravated Battery, a class B felony
Count V—Attempted Battery, a class C felony
Count VI—Attempted Battery, a class C felony
Count VII—Criminal Recklessness, a class C felony
Count VIII—Carrying a Handgun Without a License, a class A misdemeanor
Count IX—Pointing a Firearm, a class D felony
Count X—Pointing a Firearm, a class D felony
Count XI—Dealing in Marijuana, a class D felony
Count XII—Possession of Marijuana, a class D felony,
Count XIII—Maintaining a Common Nuisance, a class D felony
Count XIV—Serious Violent Felon in Possession of a Firearm, a class B felony

On December 29, 2011, the State filed a notice under Indiana Evidence Rule 404(b), indicating that the State intended to offer evidence of the previous incident in December 2010 involving Gilliam's threat to kill Heather with a handgun.

Following a hearing on December 30, 2011, the trial court ruled that evidence of the earlier incident would be admissible because it was relevant to show motive, intent, identity, and absence of mistake and accident. The trial court also noted that it would give a limiting instruction to the jury.

On April 9, 2012, Beard spoke with Officer Michael Barthelemy and again identified Gilliam as the shooter. Beard told Officer Barthelemy that Gilliam was approximately five feet away when the shooting occurred.

Gilliam's jury trial commenced on April 16, 2012. At trial, Heather's account of the events changed in several respects. For instance, Heather had previously told police that Gilliam had been dealing in marijuana. However, at trial, she claimed that she did not remember making that statement. When asked about the fact that Gilliam had threatened to kill her, Heather claimed that she "guessed" that was accurate. Similarly, although Heather had previously stated that she was afraid of Gilliam when he threatened to kill her, she claimed at trial that she was not really scared. Finally, although Heather had previously reported to the police that she had seen Gilliam after the first gunshot, she claimed at trial that she assumed it was him because she had seen the red car.

Laura Berry-Bermann, the Executive Director for the Indiana Coalition Against Domestic Violence, also testified at trial. Berry-Bermann testified that it is not unusual for a woman in circumstances similar to those experienced by Heather to subsequently recant or modify a prior identification of the person who committed the charged offense. Berry-Bermann stated that there are many possible explanations for this phenomenon, including a fear of retaliation and future violence, fear of the loss of income and support for a child that they may share in common, and loyalty to the father of their child.

Following the presentation of evidence, Gilliam was found guilty as charged on all counts. The trial court conducted a bench trial on the serious violent felon charge, and Gilliam was also found guilty on that count.

At the sentencing hearing, the trial court entered judgments of conviction on Counts I, II, XI, XIII and XIV. Gilliam was sentenced to an aggregate term of sixty-three years of incarceration[.]

*Id.* at *1-3 (citations omitted).

[3] Gilliam raised three issues on direct appeal: (1) whether trial court erred in admitting evidence of a prior act of violence against one of the victims in violation of Indiana Evidence Rule 404(b); (2) whether the evidence was sufficient to support the convictions because the victims did not unequivocally identify him as the shooter; and (3) whether his aggregate sixty-three-year sentence was inappropriate when considering the nature of the offenses and his character. *Id.* at *1. A panel of this court affirmed in all respects. *Id.* at *6.

[4] Gilliam sought post-conviction relief alleging ineffective assistance of trial counsel. Following an evidentiary hearing in which post-conviction counsel declined to call Gilliam's trial counsel to testify as a witness, the post-conviction court issued findings of fact and conclusions of law denying his petition on June

23, 2016.[1]  Thereafter, Gilliam timely filed a motion to correct error.  Following a hearing, the post-conviction court denied Gilliam's motion to correct error on May 26, 2017.  Gilliam now appeals.

# Discussion and Decision

## I. Standard of Review

[5]  Post-conviction proceedings are not an opportunity for a super-appeal; rather, they create a narrow remedy for subsequent collateral challenges to convictions that must be based on grounds enumerated in the post-conviction rules. *Timberlake v. State*, 753 N.E.2d 591, 597 (Ind. 2001), *cert. denied*, 537 U.S. 839 (2002).  A claim of ineffective assistance of counsel is properly presented in a post-conviction proceeding if the claim is not presented on direct appeal.  *Id*. Post-conviction proceedings are civil in nature and a petitioner must therefore establish his claims by a preponderance of the evidence.  Ind. Post-Conviction Rule 1(5).

[6]  On appeal from the denial of post-conviction relief, a petitioner faces a "rigorous standard of review."  *Dewitt v. State*, 755 N.E.2d 167, 169 (Ind. 2001). In reviewing the judgment of a post-conviction court, we do not reweigh the

---

[1] We commend the post-conviction court for the clarity and thoroughness of its factual findings which have aided in our review.  However, due to an error with the electronic noticing system, the parties were not notified of the post-conviction court's decision until February 3, 2017.  Therefore, the post-conviction court directed the clerk to reissue the court's prior decision and provided that any motion to correct error or notice of appeal would be due within thirty days.

evidence or reassess witness credibility and we consider only the evidence and reasonable inferences supporting the judgment. *Hall v. State*, 849 N.E.2d 466, 468-69 (Ind. 2006). We will affirm the post-conviction court's denial of post-conviction relief unless the evidence leads "unerringly and unmistakably to a decision opposite that reached by the post-conviction court." *McCary v. State*, 761 N.E.2d 389, 391 (Ind. 2002).

[7] Furthermore, we emphasize that pro se litigants without legal training are held to the same legal standards as licensed attorneys. *Basic v. Amouri*, 58 N.E.3d 980, 983 (Ind. Ct. App. 2016). Pro se litigants must adhere to the rules of procedure and must be prepared to accept the consequences of their failure to do so, including waiver for failure to present cogent argument on appeal. *Id.* at 983-84. An appellate brief should be prepared so that each judge, considering the brief alone and independent of the transcript, can intelligently consider each question presented. *Pluard ex rel. Pluard v. Patients Comp. Fund*, 705 N.E.2d 1035, 1038 (Ind. Ct. App. 1999), *trans. denied*. We "will not search the record to find a basis for a party's argument" nor will we "search the authorities cited by a party in order to find legal support for its position." *Thomas v. State*, 965 N.E.2d 70, 77 n.2 (Ind. Ct. App. 2012), *trans. denied*. We must not become an "advocate for a party, or address arguments that are inappropriate or too poorly developed or expressed to be understood." *Basic*, 58 N.E.3d at 984.

[8] In the course of his fourteen-page Brief of Appellant, Gilliam raises numerous issues for our review, only two of which are formally framed as questions presented. Almost all of these issues, however, are "too poorly developed or

expressed to be understood." *Id*. Although we endeavor to discuss several issues despite their waiver, we deem any and all remaining issues not discussed herein to be waived. *Id.* at 983-84.

## II. Ineffective Assistance of Trial Counsel

[9] Gilliam first claims the trial court erred in denying his petition for post-conviction relief on his claim that he received ineffective assistance of trial counsel. We disagree.

[10] We review claims of ineffective assistance of trial counsel under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail on a claim of ineffective assistance of counsel, the petitioner must show his trial counsel's performance was deficient and the lack of reasonable representation prejudiced him. *Id*. at 687. To satisfy the first prong, the petitioner must show counsel's representation fell below an objective standard of reasonableness and counsel committed errors so serious petitioner did not have the "counsel" guaranteed by the Sixth Amendment of the United States Constitution. *Garrett v. State*, 992 N.E.2d 710, 718-19 (Ind. 2013). To satisfy the second prong, the petitioner must show a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Id*. at 719. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. These two prongs are separate and independent inquiries. *Manzano v. State*, 12 N.E.3d 321, 326 (Ind. Ct. App. 2014), *trans. denied*, *cert. denied*, 135 S.Ct. 2376 (2015). Therefore, "if it is easier to dispose of

an ineffectiveness claim on one of the grounds instead of the other, that course should be followed." *Talley v. State*, 736 N.E.2d 766, 769 (Ind. Ct. App. 2000).

[11] Notably, we recognize a strong presumption counsel rendered adequate legal assistance and afford trial counsel "considerable discretion in choosing strategy and tactics, and we will accord those decisions deference." *Timberlake*, 753 N.E.2d at 603. Therefore, in order to overcome this strong presumption, a petitioner must offer "strong and convincing evidence" to the contrary. *Smith v. State*, 822 N.E.2d 193, 202 (Ind. Ct. App. 2005), *trans. denied*.

## A. Laura Bermann's Testimony

[12] Gilliam alleges his trial counsel was ineffective for failing to object to Laura Bermann's testimony on two different bases. In order to prove ineffective assistance of counsel due to the failure to object, Gilliam must prove that an objection would have been sustained if made and that he was prejudiced by the failure. *Timberlake v. State,* 690 N.E.2d 243, 259 (Ind. 1997), *cert. denied*, 525 U.S. 1073 (1999).

[13] The post-conviction court found:

> [Heather] was asked at trial about the threat Gilliam made to her a month prior where Gilliam pulled a gun on her, threatened to kill her, and [Heather] texted her brother. [Heather] claimed she did not recall why Gilliam pulled a gun on her or what Gilliam said to her at the time. The State of Indiana called Laura Bermann, Executive Director of Indiana Coalition Against Domestic Violence to testify. The State posed a hypothetical question to Ms. Bermann which consisted of facts similar to

[Heather's] situation with Gilliam and asked whether, based upon her training and experience, it would be unusual for a victim to later recant or take back what she said regarding the identification of the person the night of the shooting. Gilliam's trial counsel initially objected to the hypothetical because it failed to include all relevant factors of the relationship. The State re-worded the hypothetical question to include additional facts. Ms. Bermann then stated her opinion, without objection, that it would not be unusual for a woman who had gone through such an experience to later recant or take back what she said regarding the identification of the person the night of the shooting. [Trial Transcript at 227-30]. She explained there are several barriers for victims of domestic violence to break away from a relationship including: fear of retaliation; loss of income and support; loyalty; lack of independence; and belief a victim can change an individual's behavior.

Appellant's Appendix, Volume II at 18.

[14] First, Gilliam claims,

A proper foundation was not laid for Ms. Bermann's testimony pursuant to Indiana Rules of Evidence 403. Specifically, there was no evidence presented to demonstrate that [Heather] had previously been battered by Mr. Gilliam; as a result, her testimony was not probative to any issue in the case. However, Gilliam argues that Ms. Bermann's testimony was highly prejudicial to Gilliam because the inference is that [Heather] was battered by Mr. Gilliam, which caused her to recant. There was no evidence presented to support Gilliam battering [Heather].

Brief of Appellant at 12 (citation omitted).

[15] Gilliam's argument, however, is left unsupported by cogent reasoning or adequate citation to authority. "Indiana Appellate Rule 46(A)(8) provides that

the argument section of the appellant's brief must 'contain the contentions of the appellant on the issues presented, supported by cogent reasoning,' along with citations to the authorities, statutes, and parts of the record relied upon, and a clear showing of how the issues and contentions in support thereof relate to the particular facts under review." *D.H. by A.M.J. v. Whipple*, 103 N.E.3d 1119, 1126 (Ind. Ct. App. 2018). Gilliam has therefore waived this issue for our review. *Id.*

[16] Waiver notwithstanding, the hypothetical posed to Bermann was based on the fact that Gilliam had previously threatened Heather with a gun—not that Heather had previously been battered—and the State had presented evidence to support this fact. *See* Trial Tr. at 147. In any event, the record reveals trial counsel was prepared for the State's line of questioning and had researched caselaw on the issue. Indeed, after the State posed the hypothetical, trial counsel requested a sidebar conference and argued the hypothetical had omitted key facts. The trial court sustained trial counsel's objection and the State reframed the hypothetical accordingly. Therefore, to the extent we can discern Gilliam's specific claim, he has failed to demonstrate deficient performance regarding this objection.

[17] Next, Gilliam claims his trial counsel failed to object to Bermann's testimony as inappropriate vouching testimony in violation of Indiana Evidence Rule 704(b). Rule 704(b) states: "Witnesses may not testify to opinions concerning intent, guilt, or innocence in a criminal case; the truth or falsity of allegations; whether a witness has testified truthfully; or legal conclusions." However, expert

testimony explaining the behavior of domestic violence victims which is not based upon personal knowledge does not constitute impermissible vouching. *See Otte v. State,* 967 N.E.2d 540, 548 (Ind. Ct. App. 2012), *trans. denied; Iqbal v. State,* 805 N.E.2d 401, 409-10 (Ind. Ct. App. 2004).

[18] Here, it is uncontested that Bermann did not have personal knowledge of the case and she neither counseled nor met with Heather prior to her testimony. Trial Tr. at 222. Bermann expressed no opinion as to the truth of Heather's statements and offered no testimony regarding those statements. Therefore, Bermann's testimony was admissible pursuant to the well-established domestic violence exception to Rule 704(b).

[19] Despite this, Gilliam argues Bermann's testimony violated this court's holding in *Odom v. State,* 711 N.E.2d 71 (Ind. Ct. App. 1999), *trans. denied.* Specifically, Gilliam argues:

> Ms. Bermann's testimony also violated this court's holding in [*Odom*] *v. State*, the State of Indiana used an expert witness to explain why a victim might recant. While the expert in [*Odom*] did not specifically mention battered woman syndrome (herein after "BWS"), the Indiana Court of Appeals ultimately determined that *"because the expert's testimony is similar to BWS testimony, we will determine the admissibility of such testimony as the admissibility of BWS, a woman must have experienced at least two violent incidents and thereafter remained in the relationship."* [Citing *Odom*, 711 N.E.2d at 72 n.2].

Br. of Appellant at 12 (citation omitted; emphasis added). Gilliam presents the emphasized language as a direct quote from *Odom*—it is not. Instead, Gilliam

combines language from two separate locations in the opinion and reorganizes them to support his argument that for Bermann's testimony to have been admissible, the record must have established Heather suffered from at least two prior violent incidents. Whether an intentional misrepresentation or the result of honest confusion, Gilliam's statement of the law is incorrect.[2]

[20] In *Odom*, the court cited *People v. Christel,* 537 N.W.2d 194, 200 (Mich. 1995), for the proposition that "[t]o be considered a battered woman, with regard to BWS, a woman must have experienced at least two violent incidents and thereafter remained in the relationship[,]" and then concluded, "we will determine the admissibility of [the expert's] testimony as the admissibility of BWS and other pattern, profile and syndrome evidence are determined." *Odom*, 711 N.E.2d at 72 n.2. However, the court's comparison of domestic violence testimony to BWS was not, as Gilliam contends, to prescribe the factual basis required to present domestic violence testimony—i.e., that a "woman must have experienced at least two violent incidents and thereafter remained in the relationship[,]"—but rather to explain domestic violence testimony is admissible under Rule 704(b) similar to "other pattern, profile and syndrome evidence[.]" *Id*. Indeed, it is for this reason *Odom* held the domestic violence testimony, almost identical to that presented here, was admissible under Rule 704(b):

---

[2] We reemphasize that pro se litigants are held to the same legal standards as licensed attorneys. *Basic*, 58 N.E.3d at 983.

. . . [the expert] testified only that it would not be unusual for a woman, who had experienced a violent incident such as that charged, to recant a prior allegation regarding that incident and the reasons she might have done so. Further, there is no evidence that [the victim] had experienced a prior incident of abuse while she was in the relationship with [the defendant].

*Id.*

[21]     Because Bermann's testimony was admissible under Rule 704(b), Gilliam has failed to demonstrate his trial counsel provided deficient performance for not objecting thereto.

## B. Testimony Regarding Marijuana

[22]     Gilliam next argues he received ineffective assistance in trial counsel's failure to object to Heather's testimony regarding Gilliam's prior use—and potential dealing—of marijuana. On this issue, the post-conviction court found:

> At trial, the State asked [Heather]: "When you were living with the defendant was there any form of illegal drug use that went on?" She responded that "occasionally we would smoke pot together." The State also asked her "were you aware that defendant was dealing marijuana as well?" She responded "No." Trial counsel did not object to this line of questioning. The State then confronted [Heather] with a prior statement she made to police where she was asked: "If he's dealing marijuana then I need you to tell me he's dealing the marijuana? Was he?" The State then asked [Heather] "And you said 'yeah.' Is that accurate?" [Heather] responded "I don't remember."

Appellant's App., Vol. II at 20.

[23]    Gilliam's argument on this point is entirely devoid of cogent reasoning or citation to authority. In fact, Gilliam does not so much as specify which "rule of evidence" his trial counsel allowed the State to violate without objection. Br. of Appellant at 13. As such, we conclude Gilliam has waived this issue for our review. *Whipple*, 103 N.E.3d at 1126.

[24]    Waiver notwithstanding, we agree with the post-conviction court's conclusion:

> . . . Gilliam was charged with possession of marijuana and dealing in marijuana that occurred on or about January 15, 2011. He was also charged with maintaining a common nuisance that occurred on or about January, 2011. [Heather] lived with Gilliam up to one week prior to the attack and the discovery by police of marijuana, scales, rolling papers, etc. in Gilliam's home. [Heather]'s testimony did not address prior bad acts. Rather, it was evidence relating to the current charges against Gilliam. As such, it was relevant to the case and not subject to objection. Therefore, the court concludes that trial counsel's failure to object to this line of questioning was not ineffective.

Appellant's App., Vol. II at 20-21.

[25]    Gilliam then argues that his trial counsel "failed to require the State to lay a proper foundation for the attempt to impeach the State's own witness[.]" Br. of Appellant at 13. Again, we find this argument waived for failure to comply with Indiana Appellate Rule 46(A)(8). But, even if Gilliam was able to establish trial counsel's performance was deficient in this regard, which he makes no effort to do, he would still be unable to demonstrate prejudice. As the post-conviction court concluded, "the State would have eventually been

allowed to admit the details of [Heather's] statement as a prior inconsistent statement once [Heather] responded she did not recall it." Appellant's App., Vol. II at 21. Therefore, absent waiver, Gilliam would still fail to demonstrate resulting prejudice.

## C. Remaining Claims

Gilliam raises several additional claims, arguing "[t]rial counsel was ineffective for failing to object to the mischaracterized facts, unsupported testimony and testifying regard [sic] documents not admitted." Br. of Appellant at 13. We conclude all of these remaining claims—save one—are waived for failure to comply with Indiana Appellate Rule 46(A)(8).

The only claim supported by citation to authority is Gilliam's allegation that his trial counsel was ineffective in failing to object to Lieutenant Hayworth's testimony that Heather had made a statement to him regarding Gilliam's prior marijuana dealing. Specifically, Gilliam argues that because Heather "had already been impeached by her previous statement, . . . Lieutenant Hayworth's testimony was cumulative because the statement was no longer inconsistent as [Heather] had already admitted to it." Br. of Appellant at 14. Gilliam contends his trial counsel should have objected to the testimony and requested a corresponding limiting instruction.

Contrary to Gilliam's contention, however, Heather did not confirm her statement when confronted by her prior inconsistent statement; rather, Heather

stated "I don't remember."  Trial Tr. at 148; *see supra* ¶ 22.  The trial court concluded:

> Indiana Rules of Evidence provide that any party, including the party that called the witness, may attack the witness's credibility. [Evid. R. 607].  The Rules further provide that extrinsic evidence of a witness's prior inconsistent statement is admissible when a witness is given the opportunity to deny the statement.  [Evid. R. 613(b)].
>
> Here, [Heather] did not admit to making the statement but only stated that she did not remember making the statement.  Per the Rules of Evidence, the State was allowed to bring forth extrinsic evidence through Lt. Hayworth that [Heather] indeed admitted that Gilliam dealt in marijuana as a prior inconsistent statement. Therefore, any objection trial counsel could have made to this testimony would not have been sustained and Gilliam cannot show how he was prejudiced by his counsel's failure to object.

Appellant's App., Vol. II at 28.

[29] On appeal, Gilliam simply reasserts his argument from his petition for post-conviction relief.  Therefore, Gilliam has failed to demonstrate the evidence leads "unerringly and unmistakably to a decision opposite that reached by the post-conviction court[,]" and we must affirm the post-conviction court's judgment.  *McCary*, 761 N.E.2d at 391.

## III. Ineffective Assistance of Post-Conviction Counsel

[30] Finally, Gilliam argues his post-conviction counsel rendered ineffective assistance by failing to "subpoena and/or secure Gilliam's trial counsel's

testimony during the PCR-Hearing." Br. of Appellant at 10. Once more, we disagree.

[31] There is no federal or state constitutional right to counsel in post-conviction proceedings. *Hill v. State*, 960 N.E.2d 141, 145 (Ind. 2012).

> We therefore apply a lesser standard responsive more to the due course of law or due process of law principles which are at the heart of the civil post-conviction remedy. We adopt the standard that if counsel in fact appeared and represented the petitioner in a procedurally fair setting which resulted in a judgment of the court, it is not necessary to judge his performance by the rigorous standard set forth in [*Strickland*].

*Baum v. State,* 533 N.E.2d 1200, 1201 (Ind. 1989).

[32] Since *Baum,* our supreme court has explained that post-conviction counsel must be more than a "warm body," however. This standard occasionally requires a reviewing court to look to the actual representation of post-conviction counsel to determine whether "[c]ounsel, in essence, abandoned [their] client" by failing to present any evidence in support of their client's claim. *Waters v. State*, 574 N.E.2d 911, 911-12 (Ind. 1991) (holding post-conviction counsel rendered ineffective assistance where the post-conviction court ordered the case submitted on affidavits and the petitioner submitted his own inadequate affidavits without assistance from post-conviction counsel, thus "no actual legal representation occurred"). In two subsequent cases, *Bahm v. State*, 789 N.E.2d 50, 61-62 (Ind. Ct. App. 2003), *trans. denied*, and *Taylor v. State*, 882 N.E.2d 777, 783-84 (Ind. Ct. App. 2008), we held that the petitioner received ineffective

assistance of post-conviction counsel where counsel failed to submit any evidence, particularly the trial transcript, in support of the petitioner's claim of ineffective assistance of trial counsel.

[33]     Here, the record demonstrates that post-conviction counsel appeared and represented Gilliam, which resulted in a judgment of the post-conviction court now under review. Post-conviction counsel successfully admitted the record from Gilliam's direct appeal and relied upon the trial transcript as evidence to support the claims he raised in Gilliam's amended petition for post-conviction relief. Pursuant to *Baum* and its progeny, therefore, Gilliam received a procedurally fair post-conviction proceeding.

[34]     To the extent Gilliam argues his post-conviction counsel was ineffective for failing to present the testimony of his trial counsel, we view this argument as a claim of deficient performance by post-conviction counsel. However, as explained in *Baum,* deficient performance by post-conviction counsel is not a cognizable claim under the Sixth Amendment. *Matheney v. State*, 834 N.E.2d 658, 663 (Ind. 2005). Put simply, the fact that post-conviction counsel chose to rely solely on the trial transcript to support his arguments without obtaining trial counsel's testimony is not "abandonment" and did not deprive Gilliam of a procedurally fair post-conviction proceeding. *Id.*

# Conclusion

The post-conviction court did not err in concluding Gilliam is not entitled to relief on his claim that he received ineffective assistance of trial counsel and Gilliam similarly failed to demonstrate that he received ineffective assistance of post-conviction counsel. We therefore affirm the post-conviction court.

Affirmed.

Baker, J., and May, J., concur.