# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Oct 10 2018, 9:29 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Frederick A. Turner
Bloomington, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Katherine A. Cornelius
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Termination of the Parent-Child Relationship of:

R.M. and A.S. *(Minor Children)*
and
R.J.M. *(Father)*,
*Appellant-Respondent,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner.*

October 10, 2018

Court of Appeals Case No.
18A-JT-1096

Appeal from the Monroe Circuit Court

The Honorable Stephen R. Galvin, Judge

Trial Court Cause Nos.
53C07-1711-JT-901
53C07-1711-JT-902

**Robb, Judge.**

## Case Summary and Issues

[1] R.J.M. ("Father") appeals the juvenile court's termination of his parental rights to R.M. and A.S. (collectively, "Children"), raising three issues for our review which we consolidate and restate as two: (1) whether the juvenile court erred by admitting certain evidence, and (2) whether the juvenile court's termination order is supported by clear and convincing evidence. Concluding Father waived the issue of whether the juvenile court erred by admitting certain evidence and the termination order is not clearly erroneous, we affirm.

## Facts and Procedural History

[2] Father and C.S.B. ("Mother") are the parents of Children, who were born January 24, 2014, and January 14, 2015.[1] On June 1, 2016, the Indiana Department of Child Services ("DCS") filed a petition alleging Children were children in need of services ("CHINS") because the Children's two-month-old sibling, K.M., had been found dead inside Mother's home while under the supervision of Father. On its own motion, the juvenile court also entered an order to transport Father to a hospital for a psychological evaluation.

[3] Shortly after K.M.'s death, Father was arrested and charged with neglect of a dependent causing death and aggravated battery, both Level 1 felonies. Father

---

[1] Mother's parental rights were also terminated but she consented to the Children's adoption and does not participate in this appeal. Accordingly, we limit our recitation of the facts to those applicable to Father.

has remained incarcerated for the duration of this case and was convicted of both charges on March 8, 2017, and sentenced to forty years in the Indiana Department of Correction.

[4] The juvenile court found Children to be CHINS on December 7, 2016, just over six months after the Children were removed from the home. On January 23, 2017, the juvenile court issued a dispositional order that required Father to cooperate with DCS, complete a substance abuse assessment, submit to random drug and alcohol screens, sign any necessary releases, attend to his mental health needs, abide by the terms of the no-contact order prohibiting him from contacting Mother or the Children, and complete a psychological evaluation.

[5] On August 21, the juvenile court adopted the DCS recommendation to change the permanency plan from reunification to adoption. Subsequently, DCS filed a verified petition for the termination of the parent-child relationship ("TPR") between Father and Children on November 30.

[6] The juvenile court conducted a TPR hearing on March 29, 2018. There, the juvenile court found, in relevant part:

> 2. On May 29, 2016, [Children] were residing in the home of [Mother]. [K.M.], a two-month old sibling of [Children], was also residing in the home. On May 29, [K.M.] was found unresponsive. Ultimately, [K.M.] died. An autopsy revealed multiple skull fractures with subdural hemorrhages. The cause of death was ruled blunt force trauma to the head.
>
> 3. [Father] was caring for [K.M.] on May 29, 2016. He stated that he had not checked on [K.M.] from approximately 9:00

AM to 4:45 PM. [Mother] did not return to the home until 4:00 PM.

4. [Mother] admitted to ongoing marijuana use in the home. On May 31, 2016, [Mother] was observed to be impaired and the home smelled of marijuana. The [Children] were in the home at the time. [R.M.] was observed to have numerous blisters on her hands indicative of healing burns. The [Children] were removed by the Department of Child Services.

5. [Father] also admitted to ongoing marijuana use in the home.

6. [Father] was charged with Aggravated Battery, a level 1 felony; and, Neglect of a Dependent Resulting in Death, a level 1 felony. [Father] was convicted of both counts on March 8, 2017. He was sentenced to 40 years for Aggravated Battery. He was sentenced to 2 1/2 years for Neglect of a Dependent Resulting in Death. The sentences run concurrently. [Father] is currently serving these sentences.

7. [Father] was previously convicted for Child Molesting, a class C felony, on February 10, 2011. He was sentenced to 706 days in jail.

8. [Father] is also a registered sex offender resulting from a conviction in Prince William County, Virginia.

9. Caseworker Sara Santoro met with [Father] at the Monroe County Jail. They discussed his care of [K.M.]. [Father] told Ms. Santoro that he had told [Mother] that he was incapable of caring for the children. He also stated that he did not want to have children, but [Mother] continued to have his children. He took no responsibility for the death of [K.M.]. He

reiterated that he could not care for the children and told [Mother] that he could not care for them.

10. A Petition alleging that the children were Children in Need of Services was filed on June 1, 2016. The children were found to be Children in Need of Services on December 7, 2016.

11. A Dispositional Hearing was held on January 23, 2017. . . .

12. [Father] was ordered to do [certain things] . . . .

13. Neither parent has complied with the dispositional orders.

* * *

15. DCS attempted to schedule a psychological evaluation and substance evaluation for [Father] at the Monroe County Jail. However, on the advice of counsel, he could not participate.

* * *

17. CASA Marissa Reed believes that termination of parental rights and adoption by the foster parents is in the best interests of these children.

Appellant's Appendix, Volume 2 at 36-39. The juvenile court entered the following conclusions thereon:

1. The children have been removed from the parents for at least six months under a dispositional decree . . . .

2. There is a reasonable probability that the conditions which resulted in the removal of the children, or the reasons for placement outside the home of the parents, will not be remedied, and/or, the continuation of the parent-child relationship poses a threat to the well-being of the children.

[Children] were removed from their home after their two-month-old sister, [K.M.], died from blunt force trauma to the head. [Father] was arrested and convicted for Aggravated Battery, a level 1 felony; and, Neglect of a Dependent Resulting in Death, a level 1 felony. He is currently serving a 40 year sentence. By his own admission, he is not an appropriate caregiver for the children. He will not be available to care for the children before they reach adulthood.

* * *

Clearly, there is a reasonable probability that the conditions which resulted in the removal of the children will not be remedied. Further, considering the death of [K.M.] while in the care of [Father], continuation of the parent-child relationship poses a threat to the well-being of the children.

3. Termination of the parent-child relationship is in the best interests of the children.

[Children] have been in placement for the last 22 months. They are growing up in foster care. As noted above, their parents are incapable of caring for them. There is no reasonable alternative for these children other than termination of parental rights and adoption. Clearly, this is in their best interests.

4. The Monroe County Department of Child Services has a satisfactory plan for the care and treatment of the children.

The foster parents . . . wish to adopt these children. They have provided the children with a safe and stable home. The children suffered from developmental delays at the time of removal. Since their placement, their progress has been "phenomenal' according to Sarah Santoro. The children are thriving in this home. Adoption is an appropriate and satisfactory plan for the care and treatment of [Children].

5. The Department of Child Services has proven the allegations in the Petition to Terminate the Parent-Child Relationship by clear and convincing evidence.

*Id.* at 39-40. Father now appeals.

# Discussion and Decision

A parent's interest in the care, custody, and control of his child is "perhaps the oldest of the fundamental liberty interests[,]" *Bester v. Lake Co. OFC*, 839 N.E.2d 143, 147 (Ind. 2005), and these rights are protected by the Fourteenth Amendment to the United States Constitution, *In re D.D.*, 804 N.E.2d 258, 264 (Ind. Ct. App. 2004), *trans. denied*. However, these constitutionally protected rights are not without limitation. The law provides for the termination of the parent-child relationship when parents are unable or unwilling to meet their parental responsibilities. *In re R.H.*, 892 N.E.2d 144, 149 (Ind. Ct. App. 2008).

# I. Standard of Review

[8] When reviewing the termination of parental rights, we do not reweigh the evidence or judge the credibility of witnesses. *In re D.D.,* 804 N.E.2d at 265. We only consider evidence, and reasonable inferences therefrom, most favorable to the judgment. *Id.* In deference to the juvenile court's unique position to assess the evidence, we will only set aside the court's judgment terminating a parent-child relationship when it is clearly erroneous. *In re L.S.,* 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *trans. denied*, *cert. denied*, 534 U.S. 1161 (2002). Similarly, we review a trial court's decision to admit or exclude evidence for abuse of discretion. *In re Des.B.*, 2 N.E.3d 828, 834 (Ind. Ct. App. 2014). The trial court abuses its discretion only when its decision is clearly against the logic and effect of the facts and circumstances before it. *Id*.

[9] As required by statute, the juvenile court entered findings of fact and conclusions thereon when terminating Father's parental rights. Ind. Code § 31-35-2-8 (providing "if the court finds the allegations in a petition . . . are true, the court shall terminate the parent-child relationship" and "shall enter findings of fact that support the entry of the conclusions"). Accordingly, we apply a two-tiered standard of review. *Bester*, 839 N.E.2d at 147. We must first determine whether the evidence supports the findings; then we determine whether the findings support the judgment. *Id.* Findings will only be set aside if they are clearly erroneous and findings are clearly erroneous only "when the record contains no facts to support them either directly or by inference." *Yanoff v. Muncy,* 688 N.E.2d 1259, 1262 (Ind. 1997).

# II. Termination of Parental Rights

[10] To terminate parental rights, Indiana Code section 31-35-2-4(b)(2) requires the State to prove, in relevant part:

> (B) that one (1) of the following is true:
>
>> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>>
>> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>
> * * *
>
> (C) that termination is in the best interests of the child; and
>
> (D) that there is a satisfactory plan for the care and treatment of the child.

The State must prove the foregoing elements by clear and convincing evidence. Ind. Code § 31-37-14-2; *In re V.A.*, 51 N.E.3d 1140, 1144 (Ind. 2016). However, "[b]ecause subsection (b)(2)(B) is written in the disjunctive, . . . the [juvenile] court need only find one of the two elements by clear and convincing evidence." *Castro v. State Office of Family & Children*, 842 N.E.2d 367, 373 (Ind. Ct. App. 2006) (citation omitted), *trans. denied*.

[11] Here, the juvenile court found that the State proved both subsections (i) and (ii) of Indiana Code section 31-35-2-4(b)(2) by clear and convincing evidence. Father now challenges the sufficiency of the evidence to support both findings.[2]

## A. Admission of Evidence

[12] Before we proceed to the merits of Father's challenges to the sufficiency of the evidence, we must first determine what evidence was properly before the juvenile court. Father contends the juvenile court abused its discretion when it admitted the CHINS fact finding order into evidence. Specifically, Father argues that by admitting an order from a proceeding in which the State had a lower burden of proof, the juvenile court "effectively lowered the burden of proof to the CHINS burden" to a preponderance of the evidence, rather than the clear and convincing evidence standard required to terminate Father's parental rights. Brief of Appellant at 14. Father further contends the evidence is hearsay for which no proper exception was offered.

[13] Aside from these perfunctory assertions and a few citations to the relevant statutes and basic statements of law, however, Father fails to advance a cogent argument or provide adequate citation to relevant authority supporting his

---

[2] Father has not contested the juvenile court's conclusion that termination is in the best interests of the Children or that there is a satisfactory plan for the care and treatment of the Children. *See* Appellant's App., Vol. 2 at 39-40, ¶¶ 3-4. Accordingly, Father has waived any argument as to these conclusions. *A.D.S. v. Indiana DCS*, 987 N.E.2d 1150, 1156 n. 4 (Ind. Ct. App. 2013), *trans. denied*.

points. [3] In fact, Father fails to even specify the evidence he now claims was inadmissible or explain how the admission of the evidence amounted to reversible error. "Indiana Appellate Rule 46(A)(8) provides that the argument section of the appellant's brief must 'contain the contentions of the appellant on the issues presented, supported by cogent reasoning,' along with citations to the authorities, statutes, and parts of the record relied upon, and a clear showing of how the issues and contentions in support thereof relate to the particular facts under review." *D.H. by A.M.J. v. Whipple*, 103 N.E.3d 1119, 1126 (Ind. Ct. App. 2018). Because Father failed to do so, he has thereby waived this issue for our review. *See, e.g.*, *Reed v. Reid*, 980 N.E.2d 277, 297 (Ind. 2012) ("Failure to comply with this rule results in waiver of the argument on appeal.").

## B. Remedy of Conditions

[14] Proceeding to the merits of Father's properly presented arguments, Father first contends the State failed to prove by clear and convincing evidence the conditions resulting in Children's removal will not be remedied. We disagree.

> In determining whether the conditions that resulted in the children's removal will not be remedied, we engage in a two-step analysis. First, we identify the conditions that led to removal; and second, we determine whether there is a reasonable probability that those conditions will not be remedied. In the second step, the trial court must judge a parent's fitness as of the time of the termination proceeding, taking into consideration

---

[3] Notably, Indiana Rule of Evidence 201 permits courts to take judicial notice of "records of a court of this state."

evidence of changed conditions—balancing a parent's recent improvements against habitual patterns of conduct to determine whether there is a substantial probability of future neglect or deprivation. We entrust that delicate balance to the trial court, which has discretion to weigh a parent's prior history more heavily than efforts made only shortly before termination. Requiring trial courts to give due regard to changed conditions does not preclude them from finding that parents' past behavior is the best predictor of their future behavior.

*In re E.M.*, 4 N.E.3d 636, 642-43 (Ind. 2014) (citations, quotations, and footnote omitted).

[15] Here, Children were removed by DCS after their sibling, K.M., was found dead in the care of Father. Father admitted that he had not checked on the two-month-old child for almost eight hours and an autopsy revealed the cause of K.M.'s death was blunt force trauma to the head. Father was charged with and later convicted of aggravated battery and neglect of a dependent causing death as a result of the incident.

[16] Mindful of the particularly disturbing conditions that led to the Children's removal, we proceed to balance Father's habitual patterns of conduct against recent improvements. In addition to Father's most recent convictions, DCS presented evidence that Father was convicted of child molesting in 2011 and that Father is a registered sex offender due to a previous conviction in Virginia. Father failed to complete a psychological evaluation or a substance abuse assessment or otherwise participate in services. Father also failed to sign a release, as required by the dispositional order, so that DCS could determine

what treatment, if any, Father was receiving while incarcerated. Father has admitted, repeatedly, that he is not an appropriate caregiver for the Children and the evidence reveals that Father takes no responsibility for K.M.'s death. Most importantly, however, there is no evidence of efforts on behalf of Father to improve his situation or fitness to parent.

[17] Father argues the juvenile court abused its discretion because "there is no evidence that Father was ever offered any services after the [CHINS] fact-finding hearing." Br. of Appellant at 11. Father attempts to mitigate the fact that he declined a psychological evaluation and a substance abuse assessment by noting his attorney's August 2016 email to DCS stated that Father would not participate "at this time[.]" *Id.* at 13; *see* Transcript, Volume II at 27. This email predated the CHINS disposition in January 2017 and the conclusion of Father's criminal case in March 2017. Therefore, Father's argument suggests his refusal was motivated by concerns for his ongoing criminal case and DCS failed to make a second request *after* the CHINS disposition.

[18] However, it is well established that:

> the law concerning termination of parental rights does not require [DCS] to offer services to the parent to correct the deficiencies in childcare . . . . Rather, while a participation plan serves as a useful tool in assisting parents in meeting their obligations, and while [DCS] routinely offer[s] services to assist parents in regaining custody of their children, termination of parental rights may occur independently of them, as long as the elements of Ind. Code § 31-35-2-4 are proven by clear and convincing evidence. Therefore, a parent may not sit idly by without asserting a need or desire for services and then

successfully argue that he was denied services to assist him with his parenting.

*In re B.D.J.*, 728 N.E.2d 195, 201 (Ind. Ct. App. 2000) (citations omitted). Here, Father was fully aware of the CHINS disposition and there is no evidence that Father, or his attorney, contacted DCS following his criminal conviction or otherwise notified DCS of his newfound willingness to participate in services.

[19] Therefore, we conclude the record clearly and convincingly supports a conclusion that the conditions resulting in Children's removal are unlikely to be remedied. Despite evidence of mental health issues, substance abuse, and a lengthy criminal history including the crimes which led to Children's removal from the home and the death of their sibling, there is no evidence of changed conditions or improvements on behalf of Father.

## C. Well-Being of the Children

[20] Lastly, Father contends the State failed to present clear and convincing evidence that the continuation of the parent-child relationship poses a threat to the Children's well-being. We need not address Father's argument given that Indiana Code section 31-35-2-4(b)(2)(B) is written in the disjunctive. *See In re I.A.,* 903 N.E.2d 146, 153 (Ind. Ct. App. 2009). In any event, Father's argument assumes the juvenile court abused its discretion when it admitted the CHINS fact finding order. However, as discussed above, *see supra* ¶ 14, Father waived this issue on appeal and his argument regarding whether the

continuation of the parent-child relationship poses a threat to the Children's well-being fails for the same reason.

# Conclusion

[21] The juvenile court's decision to terminate Father's parental rights was not clearly erroneous. Therefore, we affirm.

[22] Affirmed.

Baker, J., and May, J., concur.